MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
**MCLETCHIE LAW**
602 South Tenth Street
Las Vegas, Nevada 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com

LEAH WIEDERHORN (pro hac vice pending)
BRITTANY SHRADER (pro hac vice pending)
**National Association of the Deaf**
8630 Fenton Street, Suite 820
Silver Spring, MD 20910-3819
Email: anna.bitencourt@nad.org
*Counsel for Plaintiffs Andrea Hollingsworth, A.R.H., and A.D.H.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANDREA HOLLINGSWORTH, an individual; A.R.H., a minor by and through her legal guardian and/or parent, Andrea Hollingsworth; and A.D.H., a minor by and through her legal guardian and/or parent, Andrea Hollingsworth,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF NORTH LAS VEGAS, Nevada, a Municipal Corporation; PAMELA OJEDA, in her official capacity as Chief of the North Las Vegas Police Department; MICHAEL L. ROSE, an individual; ERIC SPANNBAUER, an individual; DOES I – X,<br><br>Defendants. | Case. No.:<br><br>**COMPLAINT**<br><br>**[JURY DEMAND]** |

Plaintiffs Andrea Hollingsworth, A.R.H. and A.D.H., by and through their counsel of record, hereby file this Complaint for injunctive relief and damages pursuant to 42 U.S.C.

1

§ 1983 (civil action for deprivation of rights), 42 U.S.C. § 12131 *et seq.* and its implementing regulation, 28 C.F.R. Part 35 (disability discrimination by a public entity), 29 U.S.C. § 794 (disability discrimination by a recipient of federal financial assistance), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C.§ 1367(a) (supplemental jurisdiction), and 28 U.S.C. § 2201 (creation of remedy).

## I. NATURE OF THE ACTION

This lawsuit is a civil rights action seeking redress for the unnecessary use of police force and shocking discriminatory treatment of a deaf woman and her hearing children by the North Las Vegas Police. What should have been a simple investigation into a call to the police—one that did not actually pertain to a crime—resulted in the humiliation and degradation of Andrea Hollingsworth, a deaf individual who primarily communicates in American Sign Language (ASL), and her twin eleven-year-old daughters, A.D.H. and A.R.H.

On the evening of April 7, 2021, Ms. Hollingsworth and her daughters, A.D.H. and A.R.H., were sitting in their car waiting for a friend to reimburse Ms. Hollingsworth for money owed. While they were waiting, Defendant Officer Rose approached Ms. Hollingsworth and her daughters to investigate a report of harassment. Defendant Rose proceeded to demand Ms. Hollingsworth respond to his inquires without providing her with any means to communicate, despite Ms. Hollingsworth and her children repeatedly informing him that she is deaf and Ms. Hollingsworth requesting the use of written notes. As a result, Ms. Hollingsworth could not understand anything Defendant Rose tried to communicate to her: he wore a neck gaiter the entire time he spoke to her, obliterating her ability to even recognize that he was speaking to her let alone read his lips; he refused to use pen and paper to communicate with Ms. Hollingsworth, despite her attempt to have him write notes back and forth; and, he made no attempts to locate and utilize a qualified ASL interpreter. Instead, Defendant Rose tried to rely on Ms. Hollingsworth's eleven-year-old daughters to broker communication for him, pushing them to "interpret" for him as they hysterically cried in fear for their mother and themselves.[1] By the time Defendant Officer

---

[1] A qualified American Sign Language interpreter is an interpreter "who is able to interpret effectively,

MCLETCHIE LAW
ATTORNEYS AT LAW
602 S. TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

Spannbauer arrived on the scene, Defendant Rose had converted the situation into an unnecessary physical confrontation.

Defendants Rose and Spannbauer (the "Officer Defendants") failed to provide qualified interpretation services—or any other appropriate auxiliary aid or service—for Ms. Hollingsworth, and thereby failed to ensure effective communication with her. A.D.H. and A.R.H. could not interpret between ASL and English effectively, and Defendants' insistence on using them to interpret caused the situation to escalate unnecessarily. The children cried in fear, and Ms. Hollingsworth repeatedly expressed confusion. Defendant Rose responded by yelling at the children when their mother didn't comply with his commands—commands she could not understand, particularly because her daughters did not sign the majority of Defendants' commands to her. Ultimately, Defendant Rose's refusal to effectively communicate with Ms. Hollingsworth resulted in his use of illegal and unreasonable force in a situation of his own creation and one that posed no danger to him or anyone else. The stop, detention, and eventual arrest of Ms. Hollingsworth (effectuated by handcuffing her and forcing her to the ground) was also illegal. Indeed, Ms. Hollingsworth was not cited or arrested for any crime.

Defendant Rose violently forced Ms. Hollingsworth from her car for her so-called non-compliance, shoved her to the ground, and twisted and cuffed her hands—her primary means of communication—behind her back while her daughters watched in horror and cried for him to stop.

Thus, in blatant disregard for Ms. Hollingsworth's and her daughters' rights under the law, Defendants discriminated against Ms. Hollingsworth, traumatized her children, and escalated what should have been a simple inquiry into a traumatic and unnecessary use of

_____

accurately and impartially, both receptively and expressively, using any necessary specialized vocabulary." 28 C.F.R. § 35.104. Using family members as interpreters is not appropriate because of their emotional and personal involvement, and because it would be difficult to maintain impartiality and to interpret effectively and accurately. Additionally, family members who struggle with their own expressive and receptive sign skills are difficult to understand and cannot convey messages accurately. Minor children especially should not be used to interpret unless there is an emergency involving an imminent threat to the safety or welfare of an individual or the public *and* a qualified interpreter is not available. 28 C.F.R. § 35.160(c)(3). Indeed, children who are forced to act as interpreters for their parents often feel guilty and responsible when communication goes badly and suffer trauma as a result.

force against a deaf mother—in front of her minor children. Defendants' failure to provide Ms. Hollingsworth with any effective means of communication, and their insistence on using her minor children as interpreters, caused Ms. Hollingsworth to suffer physical and emotional harm, and her daughters to experience emotional distress.

Plaintiffs now bring this lawsuit to compel Defendants to cease unlawful discriminatory and unconstitutional practices and implement policies and procedures to ensure effective communication with deaf and hard of hearing individuals, thus affording them an equal opportunity to participate in and benefit from Defendants' programs, services, and activities. No member of the public should be subjected to force and trauma because a police officer refuses to communicate with them; both federal statutory law and the United States Constitution protect citizens against the conduct at issue in this lawsuit.

## II.    JURISDICTION AND VENUE

1.    Jurisdiction is conferred on this Court by U.S.C. § 1331 *et seq.* for civil rights claims arising under the Constitution and laws of the United States. Pursuant to § 1331, this Court has original subject matter jurisdiction over Plaintiffs' claims brought under 42 U.S.C. § 1983, 42 U.S.C. § 12131, *et. seq.*, and 29 U.S.C. § 794.

2.    This Court has jurisdiction over claims arising under the laws of the State of Nevada pursuant to the supplemental jurisdiction provided for by 28 U.S.C.§ 1367(a).

3.    The prayer for relief is predicated on 28 U.S.C. § 2201 and Fed. R. Civ. P. 38. This Court has jurisdiction to award Plaintiffs damages pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12188(a)(1), 29 U.S.C. § 794(a), and Nev. Rev. Stat. § 41.130. Authorization for the request for injunctive relief is conferred by 42 U.S.C. § 12188(a)(1) and 29 U.S.C. § 794(a). Authorization for the request of attorney's fees and costs is conferred by 42 U.S.C. § 1988(b), 42 U.S.C. § 12188(a)(1) and 29 U.S.C. § 794(a).

4.    The Defendants acted, purported to act, and/or pretended to act in the performance of their official duties, and thus Defendants acted under color of law and are subject to liability as state actors pursuant to 42 U.S.C. § 1983.

///

5. Because Defendants are not arms of the State, claims pursuant to 42 U.S.C. § 1983 are not barred by the Eleventh Amendment to the United States Constitution. *See Eason v. Clark County Cty. Sch. Dist.*, 303 F.3d 1137, 1147 (9th Cir. 2002); *Culinary Workers Union v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999).

6. The acts or omissions giving rise to Plaintiffs' claims all occurred in Clark County, Nevada, and Defendants operate in Clark County, Nevada. Thus, pursuant to 28 U.S.C. § 1391(b)(2) and (c), venue is proper in the United States District Court for the District of Nevada.

### III.    PARTIES

7. During all relevant times herein, Ms. Hollingsworth is a United States citizen who resided in Clark County, Nevada at the time of the incident.

8. Ms. Hollingsworth is deaf, primarily communicates in American Sign Language (ASL), and is substantially limited in the major life activities of hearing and speaking within the meaning of federal and state anti-discrimination laws.

9. Plaintiff A.R.H. is a minor child who at all relevant times herein is a United States citizen who resided in Clark County, Nevada.

10. Plaintiff A.D.H. is a minor child who at all relevant times herein is a United States citizen who resided in Clark County, Nevada.

11. Defendant City of North Las Vegas ("North Las Vegas") is a political subdivision of the State of Nevada.

12. At all times, Defendant North Las Vegas possessed the power and authority to adopt policies and prescribe rules, regulations, policies, and practices affecting all facets of the training, supervision, control, employment, assignment, and removal of individual members of North Las Vegas Police Department (hereinafter "NLVPD").

13. NLVPD is a law enforcement agency for North Las Vegas, Nevada with jurisdiction over North Las Vegas, Nevada, and is tasked with enforcing state, federal, and local laws.

14. Defendant Ojeda is the NLVPD Chief of Police.

15.    NLVPD's policies expressly provide that the NLVPD Chief of Police is tasked with issuing NLVPD policies and procedures. (NLVPD Policies §§ 04.01.01 and 04.10.01.) Further, NLVPD Policy § 04.25.01 prohibits changes to NLVPD policies and procedures "without the expressed authority of the Chief of Police."

16.    Defendant Ojeda is also ultimately responsible for the hiring, training, and supervision of NLPD officers, including the Officer Defendants, and other NLVPD employees, including dispatch.

17.    Defendant Ojeda is sued in her official capacity.

18.    Defendant Michael L. Rose is a police officer with the NLVPD.

19.    Defendant Eric Spannbauer is a police officer with the NLVPD.

20.    Defendant Rose and Spannbauer (collectively the "Officer Defendants") are sued in their individual capacities.

21.    Defendant North Las Vegas and NLVPD are public entities and recipients of federal financial assistance, thus subjecting them to the requirements of the ADA and the Rehabilitation Act.

22.    The naming of defendants herein is based upon information and belief. Plaintiffs reserve their right to name additional defendants and modify their allegations concerning defendants named herein.

## IV.    STANDING

23.    Plaintiffs were directly affected and injured by Defendants' actions, as well as their practices and policies of violating the constitutional rights of Plaintiffs, as set forth more fully herein, and/or other abuses by Defendants operating under color of law as alleged herein.

24.    An actual case and controversy exists between Plaintiffs and Defendants concerning their respective rights, privileges, and obligations.

///

///

///

6

### V.        FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

#### *Plaintiffs*

25.     Andrea Hollingsworth is a thirty-six (36) year old African-American woman. She is profoundly deaf and communicates primarily in American Sign Language (ASL). Ms. Hollingsworth has been profoundly deaf since birth. She is able to use written English to communicate basic information, though she is unable to use written English to effectively communicate complex information. Ms. Hollingsworth has some ability to read lips but does not rely on lip reading to effectively communicate and must be able to see a person's mouth clearly to lip read at all.

26.     Ms. Hollingsworth is the mother of two hearing children, Plaintiffs A.R.H. and A.D.H. Both girls were eleven (11) years old at the time of the incident described herein. A.R.H. and A.D.H. communicate primarily using spoken English and have varying proficiencies in ASL. Although A.R.H. and A.D.H. both have some ability to communicate with Ms. Hollingsworth through sign language, neither child is a qualified ASL interpreter.

#### *Incident*

27.     On April 7, 2021, Ms. Hollingsworth was parked outside of a property where she had been renting space from a friend.

28.     Ms. Hollingsworth had her two daughters, A.R.H. and A.D.H., with her in the car.

29.     Ms. Hollingsworth was waiting for her friend to return $200.00 of rent monies Ms. Hollingsworth believed she was owed.

30.     The friend called the police from a location away from the property and apparently complained that Ms. Hollingsworth was harassing her.

31.     The friend contacted police dispatch via video relay service (VRS). The VRS interpreter notified the dispatcher that "the caller uses sign language to communicate." The dispatcher understood this to mean that the caller was deaf. Dispatch inquired if the caller's husband was also "hearing-impaired." The interpreter responded "yes, they are both deaf."

32.    The dispatcher did not inquire as to whether Ms. Hollingsworth was also deaf or used sign language to communicate.

33.    The dispatcher informed the responding officers that the call was "through a relay service."

34.    While Ms. Hollingsworth and her daughters were inside her vehicle waiting for her friend, Defendant Rose approached the driver's side of Ms. Hollingsworth's vehicle and attempted to talk to Ms. Hollingsworth.

35.    Defendant Rose was wearing a neck gaiter that covered his mouth and the bottom portion of his face.

36.    At no time during the interaction did Defendant Rose remove or lower his neck gaiter.

37.    When Defendant Rose approached, Ms. Hollingsworth motioned that she is deaf by pointing to her ears with both hands and shaking her head "no."

38.    Ms. Hollingsworth, after using both hand gestures and attempting to use an application called BIG on her cellular phone, then gestured for pen and paper to communicate with Defendant Rose. Defendant Rose did not provide her with pen or paper to communicate.

39.    Defendant Rose was close to Ms. Hollingworth's face when he approached her. While Ms. Hollingsworth could not tell what Defendant Rose was saying, she could tell from feeling body vibrations and Defendant Rose's body language that he was angry.

40.    Because she could sense he was angry, and out of fear for herself and her daughters, Ms. Hollingsworth set her phone up on her dashboard and used Facebook Live to start recording the interaction.

41.    Defendant Rose later complained that Ms. Hollingsworth was recording the interaction.

42.    Despite knowledge that Ms. Hollingworth is deaf and could not hear him, and, again, despite the fact that he was wearing a gaiter that obscured his mouth, Defendant Rose used spoken English to order Ms. Hollingsworth to exit her car and to move to the front of his car.

8

43.     Due to her deafness, Ms. Hollingsworth could not hear what Defendant Rose said. Further, because Defendant Rose was wearing a neck gaiter over his mouth and nose, Ms. Hollingsworth could not understand Defendant Rose or attempt to read his lips.

44.     Because Ms. Hollingsworth could not hear or understand him, she did not immediately exit the car when Defendant Rose instructed her to.

45.     Had Defendant Rose written or typed the instruction as Ms. Hollingsworth requested when he first approached, she would have understood the instruction and complied.

46.     Defendant Rose then instructed A.D.H. to tell Ms. Hollingsworth that he "will use force if she doesn't get out and go to the front of [his] car."

47.     Eleven-year-old A.D.H. did not have a sufficient understanding of what the officer meant to relay this information in ASL to Ms. Hollingsworth.

48.     A.D.H. was flooded with images of violence against her mother when Defendant Rose said he would use force. She thought her mother would be tased, beaten, or shot in the head and die.

49.     Because she did not understand what Defendant Rose meant and was overcome with fear for what would happen to her mother, A.D.H. did not communicate anything to her mother in ASL about exiting the vehicle or going to the front of Defendant Rose's car. A.D.H. did not use the ASL sign for force. A.D.H. simply fingerspelled the English word "f-o-r-c-e."

50.     Defendant Rose continued to speak to Ms. Hollingsworth in English, despite the fact that he knew she is deaf, his mouth was covered with a neck gaiter, and she was not looking at him.

51.     Ms. Hollingsworth was unaware that Defendant Rose was speaking to her.

52.     Ms. Hollingsworth still did not understand why the officer had approached her vehicle or even that he wanted her to exit the vehicle.

53.     When A.D.H. asked Defendant Rose "why does she have to do it?" he responded by saying "I'll have you come with me so that you can talk." Defendant Rose then grabbed Ms. Hollingsworth's arm and pulled her out of the car.

54.     Ms. Hollingsworth's daughters followed.

55.     Defendant Rose then used spoken English to instruct Ms. Hollingsworth to sit on the curb. Again, Defendant Rose's mouth was obscured by the neck gaiter.

56.     Ms. Hollingsworth could not see that Defendant Rose was speaking, and she could not hear or understand him.

57.     Defendant Rose told Ms. Hollingsworth's children to tell Ms. Hollingsworth to sit on the curb.

58.     Her daughters were able to relay this simple request to Ms. Hollingsworth in ASL.

59.     Ms. Hollingsworth complied with the directive to sit on the curb.

60.     Defendant Rose then started to explain to A.R.H. and A.D.H. in spoken English why he was there.

61.     A.R.H. and A.D.H. did not relay this information to Ms. Hollingsworth in ASL, but instead responded directly to Defendant Rose in English.

62.     Without a qualified ASL interpreter or any other appropriate auxiliary aid or service, Ms. Hollingsworth did not know Defendant Rose was speaking and could not understand what Defendant Rose was saying.

63.     Neither A.R.H. nor A.D.H. were wearing masks and their faces and mouths were visible. Thus, Ms. Hollingsworth could see when her daughters were speaking to Defendant Rose.

64.     When Ms. Hollingsworth saw that her daughters were speaking to Defendant Rose and realized that there was communication between the officer and her daughters she could not understand, she became concerned for her daughters, and was upset and felt violated and scared, so she stood up and asked her daughters in ASL "what happened?"

65.     Defendant Rose instructed A.R.H. and A.D.H. to "have her sit down."

66.     A.R.H. and A.D.H. did not relay this information to Ms. Hollingsworth in ASL or by any other means.

10

67. Without a qualified ASL interpreter or any other appropriate auxiliary aid or service Ms. Hollingsworth did not understand Defendant Rose's instruction to sit down.

68. Defendant Rose then yelled in English at Ms. Hollingworth "sit down or I will sit you down." Defendant Rose's face was still obstructed by the neck gaiter.

69. Because the lower half of Defendant Rose's face was obstructed by the neck gaiter, Ms. Hollingworth had no idea that he was speaking to her.

70. Again, A.R.H. and A.D.H. did not relay Defendant Rose's directive that Ms. Hollingsworth sit down to Ms. Hollingsworth.

71. Without a qualified ASL interpreter or any other appropriate auxiliary aid or service, Ms. Hollingsworth did not know Defendant Rose was speaking to her, did not know he had raised his voice, and, despite perceiving Defendant Rose as threatening, did not understand his instructions. She simply wanted to be able to see what was happening.

72. Defendant Rose could see that A.R.H. and A.D.H. did not sign his instruction to their mother because neither A.R.H. nor A.D.H. signed anything at all to Ms. Hollingsworth.

73. As Ms. Hollingsworth was signing in an attempt to communicate, Defendant Rose forced Ms. Hollingsworth to the ground and yelled "don't do that stuff!"

74. Defendant Rose then began talking to A.R.H. and A.D.H. again in English.

75. No one relayed this conversation to Ms. Hollingsworth.

76. Defendant Rose could see that A.R.H. and A.D.H. were not relaying the conversation to Ms. Hollingsworth in ASL because neither A.R.H. nor A.D.H. signed anything at all to Ms. Hollingsworth.

77. When Ms. Hollingsworth saw that her daughters were again speaking to the officer and realized that there was again communication taking place between the officer and her daughters that she could not understand, she became concerned for her daughters, was upset, and stood up again so that she could try to see and understand what was happening and protect her daughters.

///

11

78.     Without a qualified ASL interpreter or any other appropriate auxiliary aid or service, Ms. Hollingsworth could not understand what Defendant Rose said to her daughters, what her daughters said in response to Defendant Rose, or what Defendant Rose said to her.

79.     Without a qualified ASL interpreter or any other appropriate auxiliary aid or service, Ms. Hollingsworth did not clearly understand that Defendant Rose was directing her to remain seated or he would use force; and as a mother she did not feel comfortable without being able to see what was happening so she could monitor the interaction between the officers and her daughters as best she could.

80.     Defendant Rose then grabbed Ms. Hollingsworth's arm and pushed her back to the ground saying in spoken English with his mouth still obstructed by the neck gaiter, "don't be getting away."

81.     This was not communicated to Ms. Hollingsworth in ASL. At no time had Ms. Hollingsworth made any attempt to get away.

82.     Defendant Rose then saw Ms. Hollingsworth using sign language and asked A.D.H. and A.R.H., "what is she doing?"

83.     A.D.H. and A.R.H. responded, "she's just not doing anything." Defendant Rose then went on to complain to A.R.H. and A.D.H., "Well, she's not following directions."

84.     At this point, Defendant Rose asked for Ms. Hollingsworth's identification.

85.     A.R.H. and A.D.H. signed to Ms. Hollingsworth, "ID?"

86.     Ms. Hollingsworth indicated that it was in the car and got up to go to the car to get her ID in order to comply with Defendant Rose's request.

87.     Defendant Rose then gestured that he wanted A.D.H. to retrieve the ID.

88.     Ms. Hollingsworth vocalized in English "she don't know" in an attempt to communicate to Defendant Rose that A.D.H. did not know where the ID was located. Defendant Rose instructed Ms. Hollingsworth verbally "down, down." His mouth was still obstructed by the neck gaiter, and his command was not relayed to Ms. Hollingsworth in ASL.

12

89.   Defendant Rose could clearly see that his command was not relayed to Ms. Hollingsworth in ASL because neither A.R.H. nor A.D.H. signed anything to Ms. Hollingsworth.

90.   Without a qualified ASL interpreter or any other appropriate auxiliary aid or service, Ms. Hollingsworth did not understand Defendant Rose's instruction "down, down."

91.   Defendant Rose then forced Ms. Hollingsworth to the ground and attempted to handcuff her with her hands behind her back.

92.   While shoving Ms. Hollingsworth to the ground Defendant Rose screamed at A.R.H. and A.D.H. to "tell her to put her hands behind her back."

93.   While Defendant Rose was forcing Ms. Hollingsworth to the ground, A.R.H. and A.D.H. were watching and screaming in horror.

94.   A.R.H. and A.D.H. did not understand why their mother was being handcuffed.

95.   A.R.H. and A.D.H feared for their mother's life.

96.   As the girls hysterically cried, Defendant Rose again yelled at them to "tell her to put her hands behind her back."

97.   Defendant Rose then yelled at A.R.H. and A.D.H. to "stop" and to "back up," making it impossible for her daughters to even try to comply with his commands to convey information to their mother.

98.   Ms. Hollingsworth was more concerned about comforting her daughters and, because Defendant Rose was grabbing her arms eliminating her ability to use her hands to communicate, she attempted to communicate by vocalizing, "I'm sorry, I'm sorry" to try to calm Defendant Rose down.

99.   Ms. Hollingworth was afraid Defendant Rose was going to take her daughters away or be more violent with her.

///

///

13

100.    While her daughters tried to relay some of what was happening, none of Defendant Rose's commands were ever clearly or completely communicated to Ms. Hollingsworth in ASL or in written English.

101.    Without a qualified ASL interpreter or any other appropriate auxiliary aid or service, Ms. Hollingsworth did not understand Defendant Rose's commands to put her hands behind her back and did not understand why she was being forced to the ground.

102.    At this point, Defendant Spannbauer arrived as Defendant Rose was attempting to handcuff Ms. Hollingsworth. Defendant Spannbauer assisted Defendant Rose in handcuffing Ms. Hollingsworth's hands behind her back, further severely limiting her ability to communicate and injuring Ms. Hollingsworth in the process.

103.    The force—including the placement of an officer's knee on Ms. Hollingsworth's back—that the Officer Defendants used to cuff Ms. Hollingsworth's hands behind her back hurt Ms. Hollingsworth and exacerbated a prior back injury.

104.    Meanwhile, A.D.H. and A.R.H. continued to cry hysterically from the trauma of witnessing their mother forced to the ground and handcuffed by two men.

105.    As they cried Defendant Rose yelled at them, "Settle down! Stop it! Stop it! Stop it! Listen! One of you guys needs to talk some sense into her, okay, so someone needs to calm down so they can talk some sense into her. Somebody needs to calm down."

106.    At this point, A.D.H. began to speak to Officer Yolonda S. Saip, who had arrived on scene when Ms. Hollingsworth was on the ground and being handcuffed, and told Officer Saip that "they [Defendants Rose and Spannbauer] hurt her [Ms. Hollingsworth]!" Defendant Rose heard her say this and sneered "how did we hurt her?"

107.    Officer Saip then asked A.R.H. and A.D.H. "can you talk to me?"

108.    Both A.R.H. and A.D.H. were still crying.

109.    While Officer Saip was talking to Ms. Hollingsworth's daughters and things were beginning to calm down, Defendant Rose came over and interrupted, asking: "Are you ready to talk calmly? Are you ready to talk calmly, little girl? Is that a yes or a no?"

110.    A.R.H. and A.D.H. were scared.

14

111.    Defendant Rose then berated the eleven-year-old girls, telling them their mother "is very uncooperative. Nobody hurt her; nobody punched her; nobody kicked her; nobody tased her. Everything is perfectly fine."

112.    A.R.H. and A.D.H. did not feel perfectly fine; they were upset and scared.

113.    Ms. Hollingsworth was physically injured, upset, and scared.

114.    While Ms. Hollingsworth was handcuffed, Defendant Spannbauer asked her in spoken English if she could lip read.

115.    Ms. Hollingsworth said no and shook her head to indicate she didn't understand.

116.    Defendant Spannbauer then called A.D.H. over and repeatedly questioned Ms. Hollingsworth, asking the eleven-year-old to interpret for him.

117.    Ms. Hollingsworth tried to communicate with A.D.H. by reaching her arms as far as they could move behind her back and turning her body to the side so she could try to use her hands to sign.

118.    A.D.H. tried to explain to Defendant Spannbauer that her mother couldn't communicate because she had her hands cuffed behind her back.

119.    Defendant Spannbauer responded that Ms. Hollingsworth didn't need to communicate, even though he was asking her questions.

120.    He then said to A.D.H. "[Ms. Hollingsworth] wasn't listening," and that he needed A.D.H. to tell her mother to "calm down," and "be quiet."

121.    Defendant Spannbauer then asked A.D.H. to ask her mother if she was hurt and if she needed an ambulance.

122.    A.D.H. never communicated these questions to Ms. Hollingsworth in ASL or by any other means.

123.    At this point, Ms. Hollingsworth clearly indicated that she did not want her minor daughter to ask her any further questions and motioned for her to go back across the street where her sister was waiting.

///

15

124. Around this time, Officers Miller, Odoms, and Ramirez arrived, bringing the total count of NLVPD officers to six for the purpose of questioning a deaf woman with her children.

125. Finally, the Officers agreed to uncuff Ms. Hollingsworth and Officer Saip started communicating with Ms. Hollingsworth through pen and paper.

126. Another offer then tried to speak with Ms. Hollingsworth in spoken English. Ms. Hollingsworth again indicated she is deaf and could not hear.

127. Officer Saip then continued to communicate with Ms. Hollingsworth via pen and paper.

128. Ms. Hollingsworth was clearly not a threat.

129. Ultimately, the NLVPD officers released Ms. Hollingsworth without arrest.

130. The NLVPD officers correctly determined that Ms. Hollingsworth had not committed any crime.

131. In Defendant Rose's words, it was "all civil nonsense."

132. Had the Officer Defendants treated Ms. Hollingsworth and her daughters with respect and used pen and paper (or any other effective auxiliary aid) to communicate with Ms. Hollingsworth, they never would have used force and would have avoided harming her and traumatizing her and her daughters.

133. During the entirety of the interaction with Ms. Hollingsworth, the Officer Defendants used spoken English and directed most of their communications to Ms. Hollingsworth's children rather than trying to communicate with her directly via an effective means.

134. Due to her deafness, Ms. Hollingsworth could not hear what Defendants said.

135. Ms. Hollingsworth's minor daughters are not qualified interpreters, were frightened and upset by their interactions with the police, and could not effectively interpret for Defendants and their mother.

///

16

136.     In fact, Ms. Hollingsworth's daughters did not convey most of what Officer Rose said to their mother.

137.     Additionally, at no time during this interaction did Ms. Hollingsworth request Defendants utilize her minor children as interpreters.

138.     At no time during this interaction did Ms. Hollingsworth consent to Defendants' use of her minor children as interpreters.

139.      At no point were circumstances so exigent to justify the use of minor children as interpreters.

140.     Defendants were aware of Ms. Hollingsworth's obvious hearing disability because she informed Defendant Rose she was deaf, they observed her signing, and could observe she primarily communicated without using her voice.

141.     It was readily apparent that A.R.H. and A.D.H. are minor children.

142.     Defendants failed to undertake any meaningful assessment of Ms. Hollingsworth's communication needs.

143.     At no time did Defendants ask Ms. Hollingsworth about her communication preference.

144.     Defendants forced Plaintiffs A.R.H. and A.D.H. to try to interpret for Ms. Hollingsworth.

145.     Plaintiffs A.R.H. and A.D.H. were unable to serve as interpreters.

146.     The Officer Defendants had no reason to believe either A.R.H. or A.D.H was a certified ASL interpreter.

147.     Neither A.R.H. nor A.D.H is a certified ASL interpreter.

148.     Neither A.R.H. nor A.D.H. actually interpreted during the interaction.

149.     Given that they are minor children, the complexity of the subject matter, the emotional connection A.R.H. and A.D.H. have to the subject matter given that Ms. Hollingsworth is their mother, and the lack of exigent circumstances, utilizing them as an interpreter was inappropriate and in violation of their rights as well as Ms. Hollingsworth's.
///

17

150.     Defendants failed to ensure effective communication with Ms. Hollingsworth.

151.     Defendants caused Plaintiffs to suffer loss of liberty, humiliation, fear, anxiety, isolation, guilt, and emotional distress, and caused Ms. Hollingsworth to suffer unwanted physical contact, and physical harm.

## VI.     CAUSES OF ACTION

## CLAIM 1: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990

### (BY ALL PLAINTIFFS AGAINST DEFENDANT NORTH LAS VEGAS AND DEFENDANT OJEDA)

152.     Plaintiffs incorporate paragraphs 1 through 151 of this Complaint as if fully set forth and alleged in this section.

153.     At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, *et seq.* has been in full force and effect and has applied to Defendants' conduct.

154.     At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to the Defendants' conduct.

155.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

156.     Title II's enforcement provision states that Title II's rights and remedies "shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability..." 42 U.S.C. § 12133.

157.     Federal regulations implementing Title II of the ADA provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to

MCLETCHIE LAW
ATTORNEYS AT LAW
602 S. TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

158.    Federal regulations implementing Title II of the ADA further provide that "a public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

159.    Federal regulations implementing Title II of the ADA further provide that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

160.    Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

161.    Federal regulations implementing Title II of the ADA further provide a public entity "shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g).

162.    Federal regulations implementing Title II of the ADA further provide a public entity "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the natures of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

163.    At all times relevant to this action, Ms. Hollingsworth was substantially limited in the major life activities of hearing and speaking and was an individual with a

disability within the meaning of the ADA. 42 U.S.C. § 12102(2).

164.   A.R.H. and A.D.H. are, by virtue of being Ms. Hollingsworth's minor children, individuals who have a relationship with an individual with a known disability.

165.   Defendant North Las Vegas, and its subsidiary, the NLVPD, are public entities within the meaning of Title II of the ADA. 42 U.S.C. § 12131(1). Defendant North Las Vegas is responsible for the discrimination by Defendants alleged herein.

166.   Defendants discriminated against Ms. Hollingsworth, on the basis of disability, in violation of Title II of the ADA and its implementing regulations.

167.   Defendants discriminated against Ms. Hollingsworth by, among other things, misperceiving the effects of Ms. Hollingsworth's disability as conduct equivalent to resisting or attempting to evade Defendant Rose.

168.   Defendants discriminated against Ms. Hollingsworth by cuffing her hands behind her back, instead of in front of her, eliminating her ability to communicate.

169.   Defendants discriminated against Ms. Hollingsworth by questioning Ms. Hollingsworth while handcuffed.

170.   Defendants discriminated against Ms. Hollingsworth by failing to make reasonable modifications to NLVPD handcuffing policies to handcuff deaf individuals in front, safety permitting, to enable the person to communicate using sign language or writing.

171.   Defendants failed to ensure effective communication with Ms. Hollingsworth during the course of detainment and investigation.

172.   Defendants discriminated against A.R.H. and A.D.H. by inappropriately forcing them to try to interpret between ASL and English to facilitate communication between Defendants and their deaf mother, Ms. Hollingsworth.

173.   Defendants had knowledge of Ms. Hollingsworth's disability.

174.   Defendants, due to the obviousness and due to the above-referenced statutes, were aware of the need to accommodate deaf people and utilize auxiliary aids and services to communicate with Ms. Hollingsworth.

///

175.    When Defendants interacted with her, Ms. Hollingsworth made clear she was deaf and it was obvious that she is deaf. Defendants also knew she was deaf. Ms. Hollingsworth also asked the Defendants to communicate with her in written English. As such, Defendants were aware that they required auxiliary aids and services to communicate with Ms. Hollingsworth.

176.    Upon information and belief, Defendants believed that ASL interpretation would provide the most effective means of communication with Ms. Hollingsworth.

177.    Upon information and belief, because Defendants believed they required ASL interpretation to communicate effectively with Ms. Hollingsworth, they attempted to rely on A.D.H. and A.R.H. to provide interpretation and never tried to obtain a neutral, qualified ASL interpreter.

178.    Defendants knew A.R.H. and A.D.H are minor children and not qualified ASL interpreters.

179.    Neither of the Officer Defendants ever used written notes to communicate with Ms. Hollingsworth.

180.    Despite their knowledge that Ms. Hollingsworth is deaf, Defendants failed to provide any appropriate auxiliary aid or service to effectuate communication with Ms. Hollingsworth. As such, they were deliberately indifferent to Ms. Hollingsworth's rights under the law.

181.    Defendants' intentional discrimination caused Ms. Hollingsworth to suffer greater injury and indignity than a nondisabled person during the April 7, 2021, encounter.

182.    As a result of Defendants' failure to ensure effective communication with Ms. Hollingsworth, Defendants subjected her to excessive force, unlawfully detained and arrested her, and discriminated against her because of her disability.

183.    As a result of Defendants' failure to ensure effective communication with Ms. Hollingsworth, Defendants subjected A.R.H. and A.D.H. to discriminatory treatment including but not limited to emotional distress, proximately caused by their relationship to Ms. Hollingsworth.

184. As a direct and proximate result of Defendants' violation of Title II of the Americans with Disabilities Act, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof.

185. Pursuant to 42 U.S.C. § 12133, the remedies set forth in 29 U.S.C. § 794a are the remedies available for a violation of Title II of the ADA. Therefore, Ms. Hollingsworth seeks relief against Defendant North Las Vegas and Defendant Ojeda, including compensatory damages in an amount according to proof at trial, injunctive relief, declaratory relief, and reasonable attorney's fees and costs.

186. Plaintiffs seek an injunction mandating that Defendant North Las Vegas and Defendant Ojeda, in her official capacity as the Chief of Police, implement policies and training for NLVPD officers to provide communication aides when interacting with deaf civilians.

187. Plaintiffs moved from the City of North Las Vegas because of the discrimination by Defendants.

188. Had Defendants not discriminated against Plaintiffs, Plaintiffs would not have moved out of the City of North Las Vegas.

189. Plaintiffs intend to return to North Las Vegas and should be able to interact with the NLVPD like any other persons.

190. The failure to provide effective communication for deaf and hard of hearing people is systemic at the NLVPD.

191. NLVPD dispatch received a call from a deaf person but did not ask whether Ms. Hollingsworth was deaf to ensure effective communication.

192. Dispatch notified the responding officers that the call was through relay, but failed to dispatch an interpreter to the scene.

193. The responding officers did not request an interpreter.

194. For the vast majority of the interaction between NLVPD and Plaintiffs, the responding officers failed to provide any auxiliary aid or service to effectuate communication with Ms. Hollingsworth.

195.    Of the multiple officers who responded to the scene and interacted with Plaintiffs, only one officer made any effort whatsoever to provide auxiliary aids or services to effectuate communication.

196.    Moreover, the Officer Defendants mocked Ms. Hollingsworth's use of sign language and expressed hostility towards her for being deaf and using ASL.

197.    From these facts, it is apparent that deaf people, including Plaintiffs, have no meaningful ability to access the services of the NLVPD. Indeed, Plaintiffs and deaf people cannot even engage in routine, day-to-day interactions with NLVPD.

198.    It is substantially likely that plaintiff will experience discrimination by Defendants again without an injunction.

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973

### (BY ALL PLAINTIFFS AGAINST DEFENDANT NORTH LAS VEGAS AND DEEFENDANT OJEDA)

199.    Plaintiffs incorporate paragraphs 1 through 198 of this Complaint as if fully set forth and alleged in this section.

200.    At all times relevant to this action, Section 504 of the Rehabilitation Act (the "the RA"), 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

201.    At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendant's conduct.

202.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

///

203.    At all times relevant to this action, Ms. Hollingsworth had substantial limitations to the major life activities of hearing and speaking and was an individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9).

204.    At all times relevant to this action, Defendants have been offering programs, services, activities, or accommodations receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

205.    The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

206.    Defendants intentionally discriminated against Plaintiffs on the basis of Ms. Hollingsworth's disability, in violation of 29 U.S.C. § 794.

207.    As a direct and proximate result of Defendants' violation of section 504 of the Rehabilitation Act, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof.

208.    Therefore, Plaintiffs pray for relief against Defendant North Las Vegas and Defendant Ojeda pursuant to 29 U.S.C. § 794a, including compensatory damages in an amount according to proof at trial, declaratory relief, injunctive relief, and reasonable attorney's fees and costs.

## CLAIM 3: VIOLATION OF THE FOURTH AMENDMENT BY USE OF EXCESSIVE FORCE – INDIVIDUAL LIABILITY PURSUANT TO 42 U.S.C. SECTION 1983

### (BY MS. HOLLINGSWORTH AGAINST DEFENDANT ROSE)

209.    Plaintiffs incorporate paragraphs 1 through 208 of this Complaint as if fully set forth and alleged in this section.

210.    The Fourth Amendment to the United States Constitution provides that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. Amend. IV.

211.    Defendant Rose objectively unreasonably subjected Ms. Hollingsworth to excessive use of force by, *inter alia,* aggressively forcing her from her vehicle and, later,

MCLETCHIE LAW
ATTORNEYS AT LAW
602 S. TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

forcing her to the ground, twisting her wrist while placing her in handcuffs, and placing a knee in her back.

212. Ms. Hollingsworth had a liberty interest in her bodily autonomy and being free from such excessive force.

213. By the acts alleged herein, Defendant Rose, acting under the color of law and under his authority as a police officer, deprived Ms. Hollingsworth of her constitutional right to be free from use of excessive force in violation of the Fourth Amendment.

214. Defendant Rose got very angry at Ms. Hollingsworth and yelled at her and her daughters.

215. Defendant Rose said Ms. Hollingsworth was not cooperating.

216. At all relevant times herein, Ms. Hollingsworth was not actively resisting or evading arrest or detention.

217. Through his failure to communicate and unnecessary displays of aggression and, ultimately illegal force, Defendant Rose created a confusing, frightening, violent, deeply humiliating, and intensely traumatic situation for Mr. Hollingsworth and her daughters.

218. Defendant Rose either knew Ms. Hollingworth was deaf or knew she could not hear him or speak to him.

219. At the time leading up to Defendant Rose's decision to use force, he did not adequately communicate his commands to Ms. Hollingsworth.

220. Ms. Hollingsworth could not understand Defendant Rose's commands and, thus, was not disobeying him.

221. For example, at one point, one of Ms. Hollingsworth's daughters conveyed to her "I.D." when Defendant Rose told them he needed to see her mother's identification.

222. While Defendant Rose then indicated he wanted one of the daughters, not Ms. Hollingsworth, to retrieve the I.D., Ms. Hollingsworth could not understand Defendant Rose and she was unaware of his directive.

223. Yet, Defendant Rose used force to throw Ms. Hollingsworth to the ground.

224. Ms. Hollingworth vocalized "sorry" in an attempt to calm Defendant Rose

down as she feared she was going to be wrongfully arrested and taken from her children. Meanwhile, her daughters screamed and cried out of fear for their mother.

225.    Likewise, Ms. Hollingworth could not understand Defendant Rose when he yelled at her to put his hands behind her back. Defendant Rose used unnecessary and unreasonable force to yank Ms. Hollingsworth's arms behind her back.

226.    Objectively, Defendant Rose should have understood that the actions of Ms. Hollingsworth, who repeatedly showed she was confused, reflected incomprehension rather than noncompliance.

227.    Defendant Rose's excessive use of force was thus objectively unreasonable in light of the circumstances, in violation of the Fourth Amendment.

228.    Indeed, once Officer Saip arrived on the scene (which was after Defendant Rose employed excessive force against Ms. Hollingsworth) she was able to calm the chaotic and traumatic scene that Officer Rose had created. She asked that Ms. Hollingsworth's handcuffs be removed and, through the use of written messages, she was able to communicate with Ms. Hollingsworth. As a result, the officers were then easily able to determine that no crime had been committed by Ms. Hollingsworth.

229.    At all relevant times herein, the encounter between Defendant Rose and Plaintiffs was not uncertain or dangerous and did not require a quick resolution or split-second decision-making.

230.    At all relevant times herein, at no time did Ms. Hollingsworth pose a threat.

231.    At all relevant times herein, Ms. Hollingsworth was unarmed.

232.    At all relevant times herein, at no time did Ms. Hollingsworth pose a flight risk.

233.    At all relevant times herein, Defendant Rose had received no reports about Ms. Hollingsworth committing a life-threatening or dangerous crime.

234.    When Defendant Rose approached Ms. Hollingsworth, she was simply parked in her car with her young daughters.

///

235.    At all relevant times herein, Plaintiffs posed no apparent immediate threat to the safety of Defendant Rose or others.

236.    The NLVPD officers responding to the scene ultimately determined that Ms. Hollingsworth had committed no crime and let her leave.

237.    As a direct and proximate result of Defendant Rose's violation of Ms. Hollingsworth's Fourth Amendment right to be free from excessive use of force, Ms. Hollingsworth has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

238.    Ms. Hollingsworth's constitutional right to be free from excessive use of force was clearly established and no reasonable officer could have thought otherwise.

239.    Therefore, Ms. Hollingsworth prays for relief including compensatory and punitive damages in an amount according to proof at trial, declaratory relief, and reasonable attorney's fees and costs.

240.    As evidenced by Defendant Rose's clear violations of Ms. Hollingsworth's rights under the Fourth Amendment and other federally-protected rights, as well as his violent and hostile actions and expressed hostility towards Ms. Hollingsworth's use of ASL, Defendant Rose's conduct was either motivated by evil motive or intent or constituted reckless or callous indifference to the federally protected rights of Ms. Hollingsworth.

## CLAIM 4: VIOLATION OF THE FOURTH AMENDMENT BY USE OF EXCESSIVE FORCE – MUNICIPAL LIABILITY PURSUANT TO 42 U.S.C. SECTION 1983

### (BY MS. HOLLINGSWORTH AGAINST DEFENDANT NORTH LAS VEGAS)

241.    Plaintiffs incorporate paragraphs 1 through 240 of this Complaint as if fully set forth and alleged in this section.

242.    Ms. Hollingsworth's Fourth Amendment right to be free of excessive force was violated as a result of Defendant North Las Vegas's deliberative indifference to the constitutional rights of deaf and hard of hearing people, whom the North Las Vegas Police Department officers are likely to come into contact with.

243.    Specifically, Defendant North Las Vegas failed to enact appropriate policies for NLVPD and failed to properly supervise and train its officers on communicating and interacting with deaf and hard of hearing people and on avoiding violations of the Fourth Amendment rights of deaf and hard of hearing people, in deliberate indifference to their constitutional rights.

244.    Ms. Hollingsworth's Fourth Amendment constitutional injury would have been avoided had Defendant North Las Vegas enacted appropriate policies and properly trained and supervised Defendant Rose.

245.    Despite it being expected that its officers would interact with deaf and hard of hearing people and despite the requirements of federal law, Defendant North Las Vegas failed to enact necessary policies and failed to adequately train NLVPD officers how to interact with deaf and hard of hearing people, specifically in the use of appropriate auxiliary aids or services to ensure effective communication with deaf and hard of hearing people.

246.    The need to enact appropriate policies and to train and supervise officers on interactions with deaf and hard of hearing people—specifically, communicating with them via a means other than spoken English—is patently obvious because persons are subjected to force and other Fourth Amendment violations, including illegal stops, detentions, and arrests, if they do not obey officers' commands and deaf and hard of hearing people often need auxiliary aids or services to understand officers' commands and to communicate with officers. Moreover, the ADA and the RA require Defendant North Las Vegas to provide auxiliary aids or services to ensure effective communication.

### Inadequate Policies (Communication)

247.    NLVPD policies fail to provide clear guidance as to when various auxiliary aids and services should be used to effectuate communication.

248.    For example, the dispatcher who dispatched Defendant Rose to the scene did not determine whether Ms. Hollingsworth was deaf or hard of hearing, despite knowledge that the callers requesting police assistance were deaf and hard of hearing.

249.    NLVPD policies require officers to have a working knowledge of "Guide

for Law Enforcement Officers When in Contact with People Who are Deaf or Hard of Hearing."

250.    However, NLVPD does not maintain a copy of "Guide for Law Enforcement Officers When in Contact with People Who are Deaf or Hard of Hearing."

251.    Defendant does not provide officers with a copy of "Guide for Law Enforcement Officers When in Contact with People Who are Deaf or Hard of Hearing."

252.    In fact, upon follow up request from Plaintiffs pursuant to a public records request, Defendant North Las Vegas was unable to provide a copy of "Guide for Law Enforcement Officers When in Contact with People Who are Deaf or Hard of Hearing."

253.    Defendant North Las Vegas instead provided Plaintiffs with a copy of "Communicating with People who are Deaf or Hard of Hearing: ADA Guide for Law Enforcement Officers."

254.    "Guide for Law Enforcement Officers When in Contact with People Who are Deaf or Hard of Hearing" and "Communicating with People who are Deaf or Hard of Hearing: ADA Guide for Law Enforcement Officers" are different documents, neither of which is authored or maintained by Defendant.

255.    Additionally, neither "Guide for Law Enforcement Officers When in Contact with People Who are Deaf or Hard of Hearing" or "Communicating with People who are Deaf or Hard of Hearing: ADA Guide for Law Enforcement Officers" are policies of Defendant.

256.    NLVPD's policies do not bar officers from using friends and family members as interpreters except where allowed pursuant to law.

257.    Pursuant to 28 C.F.R. 35.160(c)(2), "a public entity shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication except - (i) In an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or (ii) Where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on

that adult for such assistance is appropriate under the circumstances."

258.    Despite the existence of clear guidelines from the DOJ concerning the use of accompanying adults as interpreters, NLVPD's policies provide no clear guidance for officers as to under what circumstances, if any, the use of adult friends or family members as interpreters could be appropriate.

259.    Pursuant to 28 C.F.R. 35.160(c)(3), "[a] public entity shall not rely on a minor child to interpret or facilitate communication, except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available."

260.    Despite the existence of clear guidelines from the DOJ barring the use of minors except in an emergency, NLVPD's policies fail to distinguish between the use of minors and other accompanying adults as interpreters.

### *Inadequate Policies (Use of Force)*

261.    Pursuant to 28 C.F.R. § 35.130(b)(7), a public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the natures of the service, program, or activity."

262.    Despite the existence of clear guidelines from the DOJ, Defendant North Las Vegas failed to modify its handcuffing policies to handcuff deaf individuals in front, safety permitting, to enable the person to communicate using sign language or writing.

### *Inadequate Training*

263.    Despite it being expected that its officers would interact with deaf and hard of hearing people, Defendant North Las Vegas failed to adequately train NLVPD officers how to interact with deaf and hard of hearing people, specifically in the use of appropriate auxiliary aids or services to ensure effective communication with deaf and hard of hearing people.

///

MCLETCHIE LAW
ATTORNEYS AT LAW
602 S. TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

264.    Defendant North Las Vegas has further failed to train its officers to handcuff deaf individuals in the front, safety permitting, to enable the person to communicate using sign language or in writing.

265.    The failure by Defendant North Las Vegas to institute adequate policies and/or failure to supervise and train is reflected in the fact that neither of the Officer Defendants used auxiliary aids or services to communicate with Ms. Hollingsworth and placed her in handcuffs with her hands behind her back. The failure by Defendant North Las Vegas to institute adequate policies and/or failure to supervise and train is also reflected in the fact that, despite getting a call from two deaf persons via video relay, dispatch did not inquire whether the other party to the alleged dispute was deaf and did not make efforts to ensure effective communications.

266.    The failure by Defendant North Las Vegas to institute adequate policies and/or failure to supervise and train is reflected in the fact that multiple officers responded to the scene and only one made any effort to write back and forth with Ms. Hollingsworth.

267.    The failure by Defendant North Las Vegas to institute adequate policies and/or failure to supervise and train is also reflected in the Officer Defendants' refusal to write back and forth with Ms. Hollingsworth and in the fact that they took Ms. Hollingsworth's attempts to communicate and inability to understand the Officers as a refusal to cooperate.

268.    The failure by Defendant North Las Vegas to institute adequate policies and/or failure to supervise and train is also reflected in the Officer Defendants' refusal to allow Ms. Hollingsworth to use her hands to communicate.

269.    This lack of training is further reflected in the Officer Defendants' complaints about Ms. Hollingsworth's efforts to sign and their hostility toward Ms. Hollingsworth when she attempted to use her hands to sign.

270.    Once Officer Saip arrived on the scene (which was after Defendant Rose employed excessive force against Ms. Hollingsworth), Officer Saip was able to calm the chaotic and traumatic scene that Officer Rose had created. Officer Saip asked that Ms.

Hollingsworth's handcuffs be removed and, through the use of written messages, she was able to communicate with Ms. Hollingsworth. As a result, the officers were easily and quickly able to determine that no crime had been committed by Ms. Hollingsworth.

271.    Ms. Hollingsworth's constitutional harm would have been avoided if Defendant North Las Vegas had enacted adequate policies and/or adequate training and supervision.

272.    As a direct and proximate result of the failure of Defendant North Las Vegas to enact adequate policies and/or adequate training and supervision, Ms. Hollingsworth has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

273.    Therefore, Ms. Hollingsworth prays for relief including compensatory damages in an amount according to proof at trial, declaratory relief, injunctive relief, and reasonable attorney's fees and costs.

## CLAIM 5: VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS BY UNLAWFUL DETENTION AND ARREST – INDIVIDUAL LIABILITY PURSUANT TO 42 U.S.C. SECTION 1983

### (BY MS. HOLLINGSWORTH AGAINST THE OFFICER DEFENDANTS)

274.    Plaintiffs incorporate paragraphs 1 through 273 of this Complaint as if fully set forth and alleged in this section.

275.    The Fourth Amendment to the United States Constitution states that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. Amend. IV. The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution incorporates the Fourth Amendment, protecting the right of an individual to be free from unlawful seizures of their person by agents of state and local government.

276.    The Officer Defendants unlawfully questioned, detained, and arrested Ms. Hollingsworth without reasonable suspicion that she had committed a crime or was in the process of committing a crime.

///

MCLETCHIE LAW
ATTORNEYS AT LAW
602 S. TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

277.    While officers may briefly detain a person if they have reasonable suspicion supported by articulable facts that criminal activity may be afoot, here, it was clear from the beginning—the call to dispatch—that Ms. Hollingsworth's former roommate was not complaining about any actual crime but rather trying to avoid "drama" by having the police get involved in an interpersonal dispute.

278.    In the words of Defendant Rose, it was "all pretty civil nonsense."

279.    Even assuming they had a reason to initially approach and detain Ms. Hollingsworth, had the Officer Defendants effectively communicated with Ms. Hollingsworth, their interactions with her would have been short and uneventful because they would have quickly been able to ascertain that Ms. Hollingworth had committed no crime.

280.    The fact that, once Officer Saip arrived on the scene, she was able to: (1) calm the chaotic and traumatic scene that Officer Rose had created; (2) remove Ms. Hollingsworth's handcuffs and, through the use of written messages; (3) communicate with Ms. Hollingsworth; and (4) determine that no crime had been committed, reflects that the Officer Defendants improperly detained and arrested Ms. Hollingsworth.

281.    Instead of taking the steps Officer Saip later took, the Officer Defendants, treated Ms. Hollingsworth with hostility and violence, detained her for an unnecessary period of time, and by placing handcuffs on her and forcing her to the ground, arrested her.

282.    When the Officer Defendants handcuffed Ms. Hollingsworth, they also deprived Ms. Hollingsworth's liberty to move her hands and communicate through ASL with her daughters.

283.    Thus, the stop, detention and arrest of Ms. Hollingsworth were each an unreasonable seizure.

284.    By the acts alleged herein, the Officer Defendants, acting under the color of law, deprived Ms. Hollingsworth of her Fourth Amendment right to be free from unlawful seizures.

///

MCLETCHIE LAW
ATTORNEYS AT LAW
602 S. TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

285.    Considering the totality of circumstances known to the Officer Defendants, Ms. Hollingsworth's stop, detention, and arrest were objectively unreasonable.

286.    As a direct and proximate result of the Officer Defendants' violations of Ms. Hollingworth's Fourth Amendment right to be free of unlawful seizure of persons, she has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

287.    Therefore, Ms. Hollingsworth prays for relief including compensatory and punitive damages in an amount according to proof at trial, declaratory relief, and reasonable attorney's fees and costs.

288.    As evidenced by the Officer Defendants' violations of Ms. Hollingsworth's rights under the ADA and RA and the Fourth Amendment, as well as their violent and hostile actions and expressed hostility towards Ms. Hollingsworth's use of ASL, the Officer Defendants' conduct was either motivated by evil motive or intent or constituted reckless or callous indifference to the federally protected rights of Ms. Hollingsworth.

## CLAIM 6: VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS BY UNLAWFUL DETENTION AND ARREST – MUNICIPAL LIABILITY PURSUANT TO 42 U.S.C. SECTION 1983

### (BY MS. HOLLINGSWORTH AGAINST DEFENDANT NORTH LAS VEGAS)

289.    Plaintiffs incorporate paragraphs 1 through 288 of this Complaint as if fully set forth and alleged in this section.

290.    Ms. Hollingsworth's Fourth Amendment rights to be free of unlawful stops, detentions, and arrests were violated as a result of Defendant North Las Vegas's deliberative indifference to the constitutional rights of deaf and hard of hearing people, whom the NLVPD officers are likely to come into contact with.

291.    Defendant North Las Vegas maintained, inadequate NLVPD policies, procedures, customs, practices, and/or training for interacting with deaf and hard of hearing individuals and avoiding violations of the Fourth Amendment rights of deaf and hard of hearing people, in deliberate indifference to their constitutional rights.

///

292.    Ms. Hollingsworth's Fourth Amendment constitutional injury would have been avoided had Defendant North Las Vegas enacted appropriate policies and properly trained and supervised the Officer Defendants.

293.    Ms. Hollingsworth's constitutional harm would have been avoided if Defendant North Las Vegas had enacted adequate policies and/or adequate training and supervision.

294.    As a direct and proximate result of the failure of Defendant North Las Vegas to enact adequate policies and/or adequate training and supervision, Ms. Hollingsworth has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

295.    Therefore, Ms. Hollingsworth prays for relief including compensatory damages in an amount according to proof at trial, declaratory relief, injunctive relief, and reasonable attorney's fees and costs.

## CLAIM 7: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS RETALIATION FOR PROTECTED SPEECH – INDIVIDUAL LIABILITY PURSUANT TO 42 U.S.C. SECTION 1983

### (BY MS. HOLLINGSWORTH AGAINST DEFENDANT ROSE)

296.    Plaintiffs incorporate paragraphs 1 through 295 of this Complaint as if fully set forth and alleged in this section.

297.    Defendant Rose retaliated against Ms. Hollingsworth by using excessive force and by unlawfully detaining her without legal basis for recording and using ASL to communicate.

298.    Defendant Rose indicated on his body camera footage that Ms. Hollingsworth's "dramatic gestures and filming" were factors that led Defendant Rose to forcefully subdue Ms. Hollingsworth and use handcuff to restrain her hands.

299.    In the Ninth Circuit, there is a recognized First Amendment right for individuals to record police exercising their official duties in public.

///

///

300.   Ms. Hollingsworth uses ASL as a primary means of communicating and was using ASL to communicate in her video recording, which Defendant Rose characterized as "dramatic gestures."

301.   Ms. Hollingsworth has a First Amendment right to communicate through ASL.

302.   Defendant Rose's decision to subdue and restrain Ms. Hollingsworth because she was recording the police interaction and using "dramatic gestures" in ASL to communicate in the video violates Ms. Hollingsworth's First Amendment right to freedom of speech and expression.

303.   Defendant Rose's adverse actions would chill a person of ordinary firmness from continuing to engage in the protected speech.

304.   Defendant Rose's recounting of the events identifies Ms. Hollingsworth's recording, which establishes a causal relationship between Ms. Hollingsworth exercising her First Amendment rights and Defendant Rose's adverse actions.

305.   Defendant Rose did not have sufficient legal basis to stop, detain and/or arrest Ms. Hollingsworth.

306.   By the acts alleged herein, Defendants, acting under the color of law and in their individual and official capacities, deprived Ms. Hollingsworth of her First Amendment rights.

307.   As a direct and proximate result of Defendant Rose's violation of Ms. Hollingsworth's First Amendment rights, she has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

308.   Therefore, Ms. Hollingsworth prays for relief including compensatory and punitive damages in an amount according to proof at trial, declaratory relief, and reasonable attorney's fees and costs.

309.   As evidenced by Defendant Rose's clear violations of Ms. Hollingsworth's rights under the ADA and RA and the First Amendment, as well as their expressed hostility towards Ms. Hollingsworth's use of ASL, Defendant Rose's conduct was either motivated

by evil motive or intent or reckless or callous indifference to the federally protected rights of Ms. Hollingsworth.

## CLAIM 8: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS RETALIATION FOR PROTECTED SPEECH – MUNICIPAL LIABILITY PURSUANT TO 42 U.S.C. SECTION 1983

(BY MS. HOLLINGSWORTH AGAINST DEFENDANT NORTH LAS VEGAS)

310.    Plaintiffs incorporate paragraphs 1 through 309 of this Complaint as if fully set forth and alleged in this section.

311.    The failure of Defendant North Las Vegas to provide adequate policies and/or training and supervision for NLVPD officers regarding the constitutional prohibition on retaliating against individuals recording police interactions and against individuals who use ASL to communicate amounts to deliberate indifference to the constitutional rights of individuals such as Ms. Hollingsworth.

312.    For example, if NLVPD officers had been appropriately trained in interacting with deaf and hard of hearing people, the Officer Defendants would not have expressed hostility towards Ms. Hollingsworth's use of ASL.

313.    Ms. Hollingsworth's constitutional harm would have been avoided if Defendant North Las Vegas had enacted adequate policies and/or adequate training and supervision.

314.    As a direct and proximate result of the aforementioned policies, procedures, customs, and/or practices by Defendant North Las Vegas, Ms. Hollingsworth has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

315.    Therefore, Ms. Hollingsworth prays for relief including monetary and compensatory damages, injunctive relief, and reasonable attorney's fees and costs in an amount according to proof at trial.

///

///

///

37

1  **CLAIM 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
2  (BY MS. HOLLINGSWORTH AGAINST DEFENDANT ROSE AND DEFENDANT
3  NORTH LAS VEGAS)

4    316.    Plaintiffs incorporate paragraphs 1 through 315 of this Complaint as if fully
5  set forth in this section.

6    317.    Defendant Rose intentionally caused Ms. Hollingsworth to suffer severe
7  emotional distress through his extreme and outrageous conduct of excessively using force to
8  subdue her, unlawfully detaining her, and keeping her in handcuffs while asking her
9  questions which effectively prevented her from communicating.

10    318.    Defendant Rose acted recklessly by disregarding the substantial risk of
11  inflicting emotional distress on Ms. Hollingsworth through their conduct.

12    319.    As Defendant Rose committed these actions during the scope of his
13  employment with the City of North Las Vegas, Defendant City of North Las Vegas is
14  vicariously liable for Defendants' conduct. Nev. Rev. Stat, § 41.130.

15    320.    As a direct and proximate result of Defendants' intentional infliction of
16  emotional distress, Ms. Hollingsworth has suffered, is suffering, and will continue to suffer
17  damages in an amount subject to proof.

18    321.    Therefore, Ms. Hollingsworth prays for relief, including compensatory
19  damages in an amount according to proof at trial.

20  **CLAIM 10: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
21  (BY PLAINTIFFS A.R.H. AND A.D.H. AGAINST DEFENDANT ROSE AND
22  DEFENDANT NORTH LAS VEGAS)

23    322.    Plaintiffs incorporate paragraphs 1 through 321 of this Complaint as if fully
24  set forth and alleged in this section.

25    323.    Defendant Rose intentionally caused Plaintiffs A.R.H. and A.D.H. to suffer
26  severe emotional distress through his extreme and outrageous conduct by using excessive
27  force to unlawfully detain their mother, Ms. Hollingsworth, in front of them and forcing them
28  to communicate his demands through ASL to Ms. Hollingsworth while subduing and

MCLETCHIE LAW
ATTORNEYS AT LAW
602 S. TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

detaining her.

324.    Defendant Rose acted recklessly by disregarding the substantial risk of inflicting emotional distress on Plaintiffs A.R.H. and A.D.H. through his conduct.

325.    Plaintiffs A.R.H. and A.D.H. suffered actual emotional distress as evidenced by their horrified screams and crying to the extent that they were unable to speak with the other officers.

326.    As Defendant Rose committed these actions during the scope of his employment with the City of North Las Vegas, Defendant City of North Las Vegas is vicariously liable for Defendant Rose's conduct.  Nev. Rev. Stat. §§ 41.130.

327.    As a direct and proximate result of Defendant Rose's intentional infliction of emotional distress, Plaintiffs A.R.H. and A.D.H. have suffered, are suffering, and will continue to suffer damages in an amount subject to proof.

328.    Therefore, Plaintiffs A.R.H. and A.D.H. pray for relief, including compensatory damages in an amount according to proof at trial.

## CLAIM 11: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (BY PLAINTIFFS A.R.H. AND A.D.H. AGAINST DEFENDANT ROSE AND DEFENDANT NORTH LAS VEGAS)

329.    Plaintiffs incorporate paragraphs 1 through 328 of this Complaint as if fully set forth in and alleged this section.

330.    A.R.H. and A.D.H. were present at the scene when Defendant Rose intentionally injured their mother; they had to endure observing Defendant Rose physically harm their mother.

331.    Plaintiffs A.R.H. and A.D.H. were injured by the contemporaneous sensory observance of the injury to their mother. They were very upset and scared, and have suffered emotional harm.

332.    Plaintiffs A.R.H. and A.D.H. are closely related to the victim, their mother.

333.    The negligent and unlawful conduct, as alleged herein, of Defendant Rose was committed in the scope of his employment at NLVPD.

334.     Defendant North Las Vegas operates NLVPD; the NLVPD employed and was responsible for the conduct and adverse actions of Defendants Rose at all relevant times. Thus, Defendant North Las Vegas is liable. Nev. Rev. Stat, § 41.130.

335.     Plaintiffs A.R.H. and A.D.H. suffered actual emotional distress as evidenced by their horrified screams and crying to the extent that they were unable to speak with the other officers.

336.     As a direct and proximate result of Defendants' negligent infliction of emotional distress, Plaintiffs A.R.H. and A.D.H. have suffered, are suffering, and will continue to suffer damages in an amount subject to proof.

337.     Therefore, Plaintiffs A.R.H. and A.D.H. pray for relief including monetary, compensatory, and punitive damages, injunctive relief, and reasonable attorney's fees and costs in an amount according to proof at trial.

## CLAIM 12: FALSE IMPRISONMENT / FALSE ARREST
### (BY MS. HOLLINGSWORTH AGAINST THE OFFICER DEFENDANTS AND DEFENDANT NORTH LAS VEGAS)

338.     Plaintiffs incorporate paragraphs 1 through 338 of this Complaint as if fully set forth in and alleged this section.

339.     Defendant Rose confined Ms. Hollingsworth by forcing her to the ground and aggressively handcuffing her hands behind her back.

340.     Defendants Rose and Spannbauer intended to handcuff Ms. Hollingsworth and as a result, Ms. Hollingsworth's hands were confined behind her back, and she was effectively unable to communicate through ASL.

341.     Ms. Hollingsworth did not consent to have her hands restrained behind her back and was both conscious of and harmed by the confinement.

342.     The Officer Defendants lacked probable cause for confining Ms. Hollingsworth's hands behind her back and subsequently detaining her because Ms. Hollingsworth did not commit any crimes and there was no evidence that a crime was in the process of being committed by Ms. Hollingsworth.

343. A reasonable deaf person in Ms. Hollingsworth's position, with no notice or warnings being properly articulated by Defendant Rose, would have understood Defendant Rose's and Defendant Spannbauer's actions as being in police custody, detained, and/or arrested.

344. The Officer Defendants did not have lawful privilege to detain Ms. Hollingsworth and confine her hands behind her back because they did not have a warrant for Ms. Hollingsworth or probable cause that she committed or was committing a crime.

345. As a direct and proximate result of Defendant Rose's and Defendant Spannbauer's false imprisonment and false arrest of Ms. Hollingsworth, she has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

346. As the Officer Defendants committed these actions during the scope of their employment with the City of North Las Vegas, Defendant City of North Las Vegas is vicariously liable for Defendants' conduct.

347. Therefore, Ms. Hollingsworth prays for relief including compensatory damages in an amount according to proof at trial.

## CLAIM 13: BATTERY

### (BY MS. HOLLINGSWORTH AGAINST THE OFFICER DEFENDANTS AND DEFENDANT CITY OF NORTH LAS VEGAS)

348. Plaintiffs incorporate paragraphs 1 through 348 of this Complaint as if fully set forth in and alleged this section.

349. Defendant Rose intentionally used physical force to force Ms. Hollingsworth to the ground, and the Officer Defendants intentionally used physical force to handcuff her hands behind her back.

350. Ms. Hollingsworth did not consent to such use of force by Defendant Rose or Defendant Spannbauer.

351. The use of physical force by the Officer Defendants was unlawful for a police officer because they did not have a warrant for Ms. Hollingsworth's arrest nor probable cause to believe that she had committed or was in the process of committing a

41

crime.

352.    The use of force by the Officer Defendants is not privileged because forcing Ms. Hollingsworth to the ground, handcuffing, and subduing her was not reasonably necessary.

353.    The use of force by the Officer Defendants was not reasonably necessary because the Officer Defendants had not adequately communicated with Ms. Hollingsworth through a qualified interpreter or other appropriate means of communicating with a deaf individual.

354.    Defendant North Las Vegas operates the NLVPD; the NLVPD employed the Officer Defendants and was responsible for the conduct and adverse actions of the Officer Defendants at all relevant times. Thus, Defendant North Las Vegas is liable. Nev. Rev. Stat, § 41.130.

355.    The intentional and unlawful conduct, as alleged herein, of the Officer Defendants was committed in the scope of their official capacities as employees of the NLVPD.

356.    Defendant North Las Vegas is liable for the battery committed against Ms. Hollingsworth that occurred in the April 7, 2021, encounter.

357.    As a direct and proximate result of Defendant Rose's and Defendant Spannbauer's intentional and unlawful use of force against Ms. Hollingsworth, she has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

358.    Therefore, Ms. Hollingsworth prays for relief, including compensatory damages, in an amount according to proof at trial.

## CLAIM 14: ASSAULT

### (BY MS. HOLLINGSWORTH AGAINST DEFENDANT ROSE AND DEFENDANT NORTH LAS VEGAS)

359.    Plaintiffs incorporate paragraphs 1 through 358 of this Complaint as if fully set forth in and alleged this section.

360.    Defendant Rose intentionally placed Ms. Hollingsworth in apprehension of

immediate bodily harm when he initiated contact to force her to sit on the curb. Once Ms. Hollingsworth was sitting on the curb, Defendant Rose advanced towards her and placed her in a state of apprehension.

361.    Defendant North Las Vegas operates the NLVPD; the NLVPD employed and was responsible for the conduct and adverse actions of Defendants Rose at all relevant times. Thus, Defendant North Las Vegas is liable. Nev. Rev. Stat, § 41.130.

362.    The intentional and unlawful conduct, as alleged herein, of Defendant Rose was committed in the scope of his official capacities as an employee of the NLVPD.

363.    Defendant North Las Vegas is liable for the assault committed against Ms. Hollingsworth that occurred in the April 7, 2021, encounter.

364.    As a direct and proximate result of Defendant Rose's intentional and unlawful assault against Ms. Hollingsworth, she has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

365.    Therefore, Ms. Hollingsworth prays for relief, including compensatory damages in an amount according to proof at trial.

## CLAIM 15: NEGLIGENCE

### (BY MS. HOLLINGSWORTH AGAINST ALL DEFENDANTS)

366.    Plaintiffs incorporate paragraphs 1 through 365 of this Complaint as if fully set forth in and alleged this section.

367.    All Defendants owed a duty of care to Ms. Hollingsworth to avoid causing unnecessary and unreasonable physical harm and emotional distress during the April 7, 2021, encounter.

368.    All Defendants breached that duty of care to Ms. Hollingsworth.

369.    Upon information and belief, a reasonable police officer in Defendant Rose's position would not have breached the duty of care owed to Ms. Hollingsworth.

370.    In considering that Ms. Hollingsworth did not pose an immediate threat to Defendant Rose, was not attempting to flee, was accompanied by two young girls, and there were no exigent circumstances that required instant decision-making or action, Defendant

Rose was likely aware that his actions would cause physical and emotional distress.

371.    Defendant Rose's actions to subdue and detain Ms. Hollingsworth, absent probable cause and without effectively communicating around her disability, demonstrate malice.

372.    As a direct and proximate result of Defendants' negligence, Ms. Hollingsworth has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

373.    Therefore, Ms. Hollingsworth prays for relief, including compensatory damages in an amount according to proof at trial.

## CLAIM 16: NEGLIGENCE

## (BY PLAINTIFFS A.R.H. AND A.D.H. AGAINST DEFENDANT ROSE AND CITY OF NORTH LAS VEGAS)

374.    Plaintiffs incorporate paragraphs 1 through 373 of this Complaint as if fully set forth in and alleged this section.

375.    Defendant Rose owed a duty of care to Plaintiffs A.R.H. and A.D.H. to not demand they act as ASL interpreters for Ms. Hollingsworth while carrying out his duty as a police officer.

376.    Defendant Rose breached this duty of care on several occasions by demanding they interpret during his exchange with them in Ms. Hollingsworth's car, on the curb outside of the car, and while he was forcefully subduing Ms. Hollingsworth.

377.    A reasonable police officer in Defendant Rose's position would not have breached the duty of care owed to Plaintiffs A.R.H. and A.D.H., as alleged herein, because a reasonable police officer would have understood that, as a deaf individual, Ms. Hollingsworth could not understand his spoken commands and would have honored Ms. Hollingsworth's reasonable request to communicate via written notes and not relied on minors to try to interpret for him. Further, a reasonable police officer in Defendant Rose's position would have seen that A.R.H. and A.D.H. were extremely upset by his actions and would not have continued to force them to try and interpret for him.

378.    Defendant North Las Vegas operates the NLVPD; the NLVPD employed and was responsible for the conduct and adverse actions of Defendant Rose at all relevant times. Thus, Defendant North Las Vegas is liable. Nev. Rev. Stat, § 41.130.

379.    As a direct and proximate result of Defendant Rose's negligence, Plaintiffs A.R.H. and A.D.H. have suffered, are suffering, and will continue to suffer damages in an amount subject to proof.

380.    Therefore, Plaintiffs A.R.H. and A.D.H. pray for relief, including compensatory damages in an amount according to proof at trial.

**CLAIM 17: NEGLIGENT TRAINING, SUPERVISION, AND/OR RETENTION**
**(BY ALL PLAINTIFFS AGAINST DEFENDANT NORTH LAS VEGAS AND**
**DEFENDNT OJEDA)**

381.    Plaintiffs incorporate paragraphs 1 through 380 of this Complaint as if fully set forth in and alleged this section.

382.    Defendants North Las Vegas and Ojeda owed a duty of care to Plaintiffs to protect them from harm resulting from their continued employment and insufficient training and supervision of officers, including the Officer Defendants.

383.    Defendants North Las Vegas and Ojeda breached this duty by failing to ensure that its officers, such as the Officer Defendants, are adequately trained to communicate commands to deaf persons and their children, in direct violation of the ADA and RA.

384.    Further, the failure by Defendants North Las Vegas and Ojeda to meet their obligations under the ADA and RA effectively constituted a failure to effectively train officers to prevent Fourth Amendment violations of deaf people.

385.    As a direct and proximate result of Defendant North Las Vegas's negligence, Plaintiffs suffered damages in an amount to be determined at trial.

386.    Therefore, Plaintiffs pray for relief, including compensatory damages in an amount according to proof at trial.

///

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray as follows:

a.       For a trial by jury on all issues;

b.       For declaratory relief;

c.       For compensatory and punitive damages in an amount at which Plaintiffs are found to be entitled at trial;

d.       For an additional amount to account for additional taxes Plaintiff may be called upon to pay in relation to awards made herein;

e.       For an award of attorney's fees and expenses pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12188(a)(1), 29 U.S.C. § 794(a), and all other applicable statutory authority;

f.       For injunctive relief, including injunctive relief compelling Defendants to comply with the ADA and RA and to implement policies and procedures to prevent future harm to Plaintiffs and those like them;

g.       For a jury trial on all issues; and

h.       Entry of such other and further relief the Court deems just and proper.

DATED this 21st day of December 2021.

*/s/ Margaret A. McLetchie*
MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No.
**MCLETCHIE LAW**
602 South Tenth Street
Las Vegas, Nevada 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com

BRITTANY SHRADER (pro hac vice pending)
LEAH WIEDERHORN (pro hac vice pending)
**National Association of the Deaf**
8630 Fenton Street, Suite 820
Silver Spring, MD 20910-3819
Email:brittany.shrader@nad.org
          leah.wiederhorn@nad.org
*Counsel for Plaintiffs, Andrea Hollingsworth, A.R.H., and A.D.H.*

ATTORNEYS AT LAW
602 S. TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

46

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MCLETCHIE LAW
ATTORNEYS AT LAW
602 S. TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM